IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

     Plaintiff,

v.

DONDRE T. LEWIS,

     Defendant.

Case No. 3:25-CR-30154-NJR-1

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

On December 2, 2025, a federal grand jury charged Defendant Dondre T. Lewis with one count of being a Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). The indictment alleges that, on or about November 9, 2025, Lewis, knowing that he had previously been convicted of a felony, "knowingly possess[ed] a firearm, said firearm having been shipped and transported in interstate or foreign commerce." (*Id.*). Lewis now moves to dismiss the indictment, arguing that, as applied to him, section 922(g)(1) violates the Second Amendment in light of the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

### LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds. *See United States v. Coscia*, 866 F.3d 782, 790 (7th Cir. 2017) (considering defendant's contention that indictment must

Page 1 of 10

be dismissed because statute under which it is brought is unconstitutionally vague). A court may decide all questions of law raised in a motion to dismiss, including the constitutionality and interpretation of a federal statute. *See United States v. Sorich*, 523 F.3d 702, 706 (7th Cir. 2008).

A constitutional challenge to a statute can be brought as either a facial challenge or an as-applied challenge. *United States v. Seiwert*, 152 F.4th 854, 860 (7th Cir. 2025). Here, Lewis raises an as-applied challenge to the constitutionality of section 922(g)(1).[1] To succeed, he must show the statute is unconstitutional because of the way it was applied to the particular facts of his case. *See United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

### DISCUSSION

The Second Amendment to the U.S. Constitution protects "the right of the people to keep and bear Arms." U.S. CONST. amend. II. Like the First Amendment, "it is the very *product* of an interest balancing by the people," which "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Dist. of Columbia v. Heller*, 554 U.S. 570, 635 (2008) (emphasis in original). 18 U.S.C. § 922(g)(1), on the other hand, criminalizes the possession of firearms by any person who has been convicted of a crime punishable by imprisonment for more than one year. Lewis argues that the Second Amendment protects his right to bear arms and that section

---

[1] Lewis initially advanced a facial challenge to section 922(g)(1) as well. Three weeks after he filed his motion to dismiss, the Seventh Circuit decided *United States v. Prince*, 171 F.4th 1009, 1011 (7th Cir. 2026), where it held that section 922(g)(1) "has at least *some* constitutional applications." *Id.* (emphasis in original). Lewis now acknowledges that his facial challenge is a "non-starter" in light of *Prince*. (Doc. 30, p. 1). He has thus waived his facial challenge. *See Walker v. Baldwin*, 74 F.4th 878, 881 (7th Cir. 2023).

922(g)(1) is unconstitutional as applied to him.

The test for analyzing the constitutionality of a firearm regulation is provided by *Bruen*. 597 U.S. at 24. Under *Bruen*, a court must first determine whether the "Second Amendment's plain text covers an individual's conduct." 597 U.S. at 24. If it does, the Constitution presumptively protects that conduct and the burden shifts to the government to demonstrate that the restriction "is consistent with this Nation's historical tradition of firearm regulation." *Id.* To determine whether a challenged law is consistent with the Nation's regulatory tradition, courts "must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances.'" *United States v. Rahimi*, 602 U.S. 680, 692 (2024) (quoting *Bruen*, 597 U.S. at 29) (alteration omitted). This analogical inquiry compares a modern-day regulation to its historical precursors by examining "how and why" each law "burden[s] [or burdened] a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. at 29. "The more closely a contemporary law mirrors a well-established historical analogue in purpose and operation, the more likely it is to be upheld. Conversely, the more a modern law diverges from traditional laws in purpose and operation, the less likely it is to survive review." *United States v. Hemani*, 608 U.S. ----, ----, 146 S.Ct. 1677, 1686 (2026).

This analysis "is neither a regulatory straightjacket nor a regulatory blank check." *Bruen*, 597 U.S. at 30. "[I]f laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Rahimi*,

602 U.S. at 692. Still, if only the reason for a modern-day restriction is permissible, the law "may not be compatible with the right if it [restricts arms-bearing] to an extent beyond what was done at the founding." *Id.* On the other hand, even if a "precise[] match" between a modern-day restriction and those of the past is lacking, the law "still may be analogous enough to pass constitutional muster.'" *Id.* (quoting *Bruen*, 597 U.S. at 30).

This test is not always an easy one to apply. *See Atkinson v. Garland*, 70 F.4th 1018, 1024 (7th Cir. 2023) (acknowledging that "the historical analysis required by *Bruen* will be difficult and no doubt yield some measure of indeterminacy."). After all, societal challenges of today may not have precise historical analogues that the Founding generation had to address. *See Hemani*, 608 U.S. at ----, 146 S.Ct. at 1687 (recognizing that "many drugs well known today were unknown in early America"). Nevertheless, the Second Amendment "can, and must, apply to circumstances beyond those the Founders specifically anticipated." *Id.* (quoting *Bruen*, 597 U.S. at 28).

The Supreme Court has repeatedly recognized that prohibitions, like those on the possession of firearms by "felons and the mentally ill," are "presumptively lawful."[2] *Rahimi*, 602 U.S. at 699 (quoting *Heller*, 554 U.S. at 626, 627, n.26). The government seizes on this observation to contend that it forecloses Lewis's as-applied challenge out of the gate. In its view, the presumptive lawfulness of felon-in-possession restrictions—like

---

[2] As recently as last month, Justices Alito and Kagan reiterated their belief that nothing in the Court's recent precedent endangers the constitutionality of section 922(g)(1). *See Hemani*, 608 U.S. at ----, 146 S.Ct. 1677, 1700 (2026) (Alito, J., concurring in judgment) ("nothing in the opinion of the Court should be read to cast doubt on the constitutionality of other provisions of § 922(g), such as §§ 922(g)(1) and (4)") (joined by Kagan, J.); *see also Bruen*, 597 U.S. at 72 (Alito, J., concurring) (explaining that *Bruen* did not "disturb[] anything that we said in *Heller* or *McDonald*, about restrictions that may be imposed on the possession or carrying of guns.") (internal citation omitted); *id.* at 129-30 (Breyer, J., dissenting) (similar) (joined by Kagan, J.).

section 922(g)(1)—means that the Second Amendment does not apply to felons. Thus, so the government argues, Lewis's as-applied challenge to section 922(g)(1) does not require a critical examination under *Bruen* because the issue is already settled by *Heller*'s dicta.

The Seventh Circuit rejected this argument in *Untied States v. Watson*, 171 F.4th 1012, 1016-18 (7th Cir. 2026). There, the court found that notwithstanding *Heller*'s dicta, *Bruen* and *Rahimi* demand a historical analysis of modern-day disarmament regimes before concluding that they pass constitutional muster. *Id.* at 1017; *see also Atkinson*, 70 F.4th at 1022 ("Nothing allows us to sidestep *Bruen* in the way the government invites"). Indeed, neither *Heller*, *Bruen*, nor *Rahimi* specifically held that the plain text of the Second Amendment does not apply to felons. *See United States v. Williams*, 113 F.4th 637, 649 (6th Cir. 2024) ("Nothing in the Second Amendment's text draws a distinction among the political community between felons and non-felons"). So, *Heller*'s dicta regarding felon-in-possession restrictions, while informative, does not resolve "the basket of questions raised in § 922(g)(1) challenges." *Watson*, 171 F.4th at 1017. That includes the one at issue here—whether section 922(g)(1) is constitutional as applied to Lewis.

The government also avers that felons are not among "the people" who may invoke the Second Amendment's protections. *Watson* settled that question too. There, the government had argued that the right to keep and bear arms was historically subject to rescission because the government could permissibly strip felons of the right to vote, sit on juries, and hold public office. *Id.* at 1018. But the loss of those rights, the court found, did not compel the conclusion that felons also lost their Second Amendment right to keep

Page 5 of 10

and bear arms. *Id.* The former involved "collective" rights (those exercised by individuals as members of "the polity"), whereas the latter concerned an "individual" right, like one's right to protest or certain criminal procedural rights. *Id.* While felons could be deprived of their collective rights, they generally retained their individual rights. *Id.* Accordingly, felons could invoke the Second Amendment's protections because the right in question was an individual one. *Id.* And because *Heller* recognized that "the people" "unambiguously refers to all members of the political community, not an unspecified subset," *Heller*, 554 U.S. at 580, the Seventh Circuit determined that felons are among "the people" protected by the Second Amendment. *Watson*, 171 F.4th at 1019.

So, *Heller* neither obviates the need for a historical analysis under *Bruen*, nor is there a question, in light of *Watson*, that Lewis is among "the people" protected by the Second Amendment. Thus, the plain text of the Second Amendment protects Lewis's possession of a firearm. The Court will therefore proceed to the second step of the *Bruen* analysis: whether his disarmament "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

It is well settled that the right to keep and bear arms "does not extend to everyone." *Watson*, 171 F.4th at 1016. Domestic abusers, people who abuse drugs, and undocumented individuals may be disarmed consistent with the history and tradition of the Second Amendment. *Rahimi*, 602 U.S. at 700; *Seiwert*, 152 F.4th at 872; *United States v. Carbajal-Flores*, 143 F.4th 877, 888 (7th Cir. 2025). Here, the question is whether the same is true of felons who, like Lewis, are disarmed pursuant to section 922(g)(1).

*Watson* examined the regulatory history of disarmament from the English common

law, through the Founding period, and into the mid-1800s. *Watson*, 171 F.4th at 1020-22. Because that decision and its reasoning bind this Court, it is not necessary to repeat the panel's discussion in depth. What matters is that the Seventh Circuit found a regulatory tradition that embraced the categorical disarmament of certain groups. In 1600s England, disarmament was based on religion or political affiliation; in the pre- and post-Founding era of this country, slaves, Native Americans, and other groups were disarmed due to their perceived "dangerousness;" and in the mid-1800s, "tramps" and Black people were disarmed. *Id.* at 1020-22. The *Watson* court identified "dangerousness" as the theme that bound these regulatory traditions together. And based on this history of group-based disarmament, it found that the Constitution allows "the legislature [to] determine that classes of people are dangerous," and to disarm them as a result. *Id.* at 1022.

While these traditions supported the disarmament of certain groups, they did not resolve the question of whether *felons* could be disarmed under the Second Amendment. To answer that question, the *Watson* court reviewed the range of permissible punishments that could be imposed on people convicted of "serious crimes," or felonies. *Id.* It found that felony convictions often carried the death penalty as a consequence. *Id.* So, if capital punishment could be doled out for crimes such as murder, rape, arson, and larceny, then logic suggested that the lesser punishment of disarmament was also available to the government. *Id.* And although this "greater includes the lesser" theory has not been "conclusively accepted," *Watson* and *Rahmi* relied on it to uphold the constitutionality of two distinct disarmament regimes. *Id.* (citing *Rahimi*, 602 U.S. at 699). It follows, then, that the regulatory traditions of categorical disarmament targeting

"dangerous" groups in combination with the availability of capital punishment for felony convictions demonstrate that the disarmament of felons today is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

Bearing in mind the Seventh Circuit's focus on a felon's "dangerousness" to determine whether section 922(g)(1) is constitutional, "the felony crimes that [Lewis] has been convicted of are important to [the Court's] analysis" of his as applied challenge. *Watson*, 171 F.4th at 1016. The government urges a broad review of Lewis's criminal history (not just his felony convictions) to assess his dangerousness. But when the Seventh Circuit left open the possibility of as applied challenges to section 922(g)(1), it did so only for "persons whose *felony convictions* do not suggest that firearms would be dangerous in their hands." *United States v. Prince*, 171 F.4th 1009, 1011-12 (7th Cir. 2026) (emphasis added). Similarly, *Watson* held that "individuals convicted of *dangerous felonies* pose a risk to society and may be disarmed consistent with the Second Amendment." *Watson*, 171 F.4th at 1023. The analytical focus is thus on a defendant's *convictions*, rather than an undefined universe of information that might contribute to or detract from a dangerousness finding. Indeed, to consider the breadth of Lewis's criminal history—misdemeanors, dismissed charges, not guilty verdicts, and the like—would mean blowing up any coherent analytical framework that might guide a dangerousness inquiry. Nothing in *Watson* or *Prince* appears to endorse such an open-ended approach. Accordingly, the Court will focus on Lewis's prior felony convictions to determine whether they demonstrate his dangerousness.

Lewis's criminal history includes convictions for obstructing justice and

aggravated fleeing. (Docs. 7 (Pretrial Services Report), and 30 (Def. Supp. Br.)).[3] Aggravated fleeing under Illinois law is committed by the "driver or operator of a motor vehicle" who tries to elude capture by the police. 625 ILCS 5/11-204.1(a). The Court has little trouble concluding that this is a dangerous offense. Common sense dictates as much. "[O]ne who flees a police officer in a vehicle draws attention to himself, challenges the immediate authority of the police officer and calls on the officer to give immediate chase. Whether the officer accepts that invitation, the perpetrator takes action to elude capture with his vehicle, action that, by its very nature, endangers others." *Welch v. United States*, 604 F.3d 408, 424 (7th Cir. 2010). Likewise, the Seventh Circuit recognized in *United States v. Gay* that a defendant who fled from police by car and on foot was "not a 'law-abiding, responsible' person who has a constitutional right to possess firearms." 98 F.4th 843, 847 (7th Cir. 2024). And the U.S. Sentencing Guidelines provide for a sentencing enhancement when a defendant recklessly creates a risk of serious bodily injury or death by fleeing from police. U.S. SENT'G GUIDELINES MANUAL § 3C1.2 (U.S. SENT'G COMM'N 2025). So, Lewis's conviction for aggravated fleeing has all the hallmarks of dangerousness that support his disarmament consistent with the history and tradition of the Second Amendment. Accordingly, section 922(g)(1) is constitutional as applied to Lewis.

---

[3] Lewis also has two convictions for being a felon in possession of a firearm under section 922(g)(1). The Court will not consider these convictions here because Lewis is contesting the constitutionality of that provision as applied to him. Considering a prior section 922(g)(1) conviction under these circumstances would create an odd circular logic where a defendant may be deemed dangerous based on prior convictions under a statute that may be unconstitutional as applied to him. *See Watson*, 171 F.4th at 1024 (where constitutionality of disarmament under section 922(g)(3) was in doubt, prior conviction under that statute could not support disarmament under section 922(g)(1)).

CONCLUSION

For these reasons, the Court finds that section 922(g)(1) does not violate the Second Amendment as applied to Defendant Dondre T. Lewis. His Motion to Dismiss the Indictment (Doc. 21) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  July 22, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**